UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JOEL M. KOPPENHOEFER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:13-cv-01237-SLD-JEH |
| | ) |
| FEDERAL DEPOSIT INSURANCE | ) |
| CORPORATION, as Receiver for | ) |
| CITIZENS FIRST NATIONAL BANK | ) |
| | ) |
| Defendant. | ) |
| | ) |

ORDER

Plaintiff Joel M. Koppenhoefer filed an eleven-count complaint against the FDIC in its capacity as receiver for Citizens First National Bank ("Citizens Bank"), seeking various legal and equitable relief from debt obligations that arose from a commercial loan guaranty made by Koppenhoefer. Plaintiff alleges that Citizens Bank fraudulently induced him to guarantee the debt obligations of TWK Properties ("TWK"), an Illinois limited liability company ("LLC"). The FDIC moved to dismiss all counts of Koppenhoefer's complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Koppenhoefer dismissed one count (XI) voluntarily. For the following reasons, Defendant FDIC's Motion to Dismiss, ECF No. 11, is GRANTED as to all remaining counts. The FDIC's Motion for Leave to File a Reply to the Response, ECF No. 18, is GRANTED.

# BACKGROUND[1]

TWK Properties was formed in November 2006 by Vincent Tessitore, Michael Wall, Diane Wall, Ralph Wutscher, and JMK Holdings, LLC. The latter was managed by Koppenhoefer. TWK's purpose was to acquire, lease, operate, hold for investment, and sell real estate located at 172, 174, and 178 South Lake Street in Aurora, Illinois ("the Lake Street Properties"). Tessitore was TWK's manager. TWK's operating agreement limited Tessitore's authority in various ways, including by authorizing him to "secure financing not to exceed $400,000" to acquire the Lake Street Properties, and by requiring that a majority in interest of TWK members consent to any arrangement under which TWK would act as guarantor for any debt obligation other than what might be necessary for the financing or operation of the Lake Street Properties. Shortly thereafter, Tessitore obtained loans from First Choice Bank totaling $356,000, for the purchase of the Lake Street Properties.

On December 7, 2007, Tessitore executed a guaranty on behalf of TWK ("the TWK Guaranty"). This guaranty was for a loan of $315,000 by Citizens Bank to River Street Lofts, LLC. River Street Lofts was organized and managed by The Vanstrand Group, Inc., for which Tessitore served as vice president and general counsel.

In January 2009, Tessitore told Koppenhoefer that TWK needed to refinance its loans from First Choice bank to avoid defaulting on the loans. Tessitore decided to refinance TWK's loans with Citizens Bank, with whom Tessitore and Vanstrand had a "preferential and special relationship." Compl. ¶ 42. Citizens Bank required, as a condition of refinancing the loans, that

---

[1] In a motion to dismiss, all well-pleaded allegations in the complaint are taken as true and viewed in the light most favorable to the plaintiff. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (citation omitted). Accordingly, the material set forth here is based on allegations in the Complaint, ECF No. 1, and the Exhibits appended thereto. *See Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1998) (stating that "the district court is entitled to consider exhibits attached to the complaint as part of the pleadings").

the individual members of TWK sign personal guaranties to Citizens Bank. Koppenhoefer did so ("the Koppenhoefer Guaranty"). *See* Compl., Ex. E, ECF No. 1-3.

The Koppenhoefer Guaranty provides that the guarantor, Koppenhoefer, will guarantee all loans and "liabilities of every kind and description, whether now owing or hereafter arising out of credit previously, contemporaneously, granted by Lender to Borrower." The guaranty designates Citizens Bank as the lender and the other individual members of TWK, as well as TWK itself, as the borrowers. *Id.* at 1. The guaranty provides, in a paragraph titled "REPRESENTATIONS":

> Guarantor acknowledges and agrees that Lender (a) has not made any representations or warranties with respect to, (b) does not assume any responsibility to Guarantor for, and (c) has no duty to provide information to the undersigned regarding the enforceability of any of the indebtedness or the financial condition of any Borrower or any other guarantor. Guarantor has independently determined the creditworthiness of Borrower and the enforceability of the obligations of Borrower to Lender and until such obligations are paid in full in accordance with this Guaranty, Guarantor will independently and without reliance on Lender continue to make such determinations.

*Id*. Koppenhoefer did not know about the TWK Guaranty when he signed the Koppenhoefer Guaranty. Upon receipt of guaranties from all individual members of TWK, including Koppenhoefer, Citizens Bank loaned TWK $356,000.

On November 16, 2010, Citizens Bank filed a complaint in Illinois state court, *Citizens First National Bank v. River Street Lofts, LLC, at al.*, No. 2010 CH 5273, which sought to recover on the loan to River Street Lofts, and sought judgment from TWK, under the terms of the TWK Guaranty, for $276,334.31. On May 1, 2012, Citizens Bank entered into a settlement agreement with TWK and all the members of TWK besides Koppenhoefer, who was not informed about the settlement. Under the terms of this settlement, the settling members of TWK paid Citizens Bank $275,000 and agreed not to defend against a forthcoming foreclosure action

3

against the Lake Street Properties. In return, Citizens Bank dismissed its claim against TWK and released TWK from the TWK guaranty, and released the non-Koppenhoefer members of TWK from their individual guarantees. This secret agreement excluded Koppenhoefer.

Six days later, Citizens Bank filed a complaint, again in Illinois state court, *Citizens First National Bank v. TWK Properties, LLC, et al.*, No. 2012 CH 1600. The complaint sought foreclosure of the Lake Street Properties and a judgment against Koppenhoefer, as the only remaining guarantor for TWK, for the amount claimed then to be due under the loan, $344,515.19. Citizens Bank later foreclosed on the property and dismissed TWK as a defendant. In January 2013, Citizens Bank sold the property for $250,000, allegedly well below fair market value.

On February 1, 2013, Koppenhoefer submitted these claims for administrative review to the FDIC. The FDIC disallowed these claims on March 27, 2013.

## DISCUSSION

In his Response to the FDIC's Motion to Dismiss, Koppenhoefer voluntarily dismissed the eleventh count of his original complaint.[2] Pl.'s Resp. to Mot. Dismiss 23, ECF No. 15. The ten remaining counts in Koppenhoefer's Complaint are demands for, or allegations that Citizens Bank committed:

    (1): Declaratory judgment that the Koppenhoefer Guaranty is void and unenforceable.

    (2): Declaratory judgment that the TWK Guaranty is void *ab initio* for lack of authority.

    (3): Declaratory judgment that the TWK Guaranty is void for lack of consideration.

    (4): Declaratory judgment of accord and satisfaction.

    (5): Declaratory judgment of no right to allocation under the Koppenhoefer Guaranty.

---

[2] Koppenhoefer validly did so without a court order because the FDIC had not yet served an answer or a motion for summary judgment. *See* Fed. R. Civ. P. 41(a)(1)(A)(i).

4

(6): Fraud, in inducing Koppenhoefer to sign the Koppenhoefer Guaranty.

(7): Civil conspiracy with Tessitore and the other members of TWK.

(8): Negligence in permitting Tessitore to enter into certain debt obligations, and in permitting Koppenhoefer to sign the Koppenhoefer Guaranty.

(9): Breach of the Koppenhoefer Guaranty in holding Koppenhoefer liable for debt obligations of TWK enforced under the TWK Guaranty.

(10): Failure to mitigate, by selling the Lake Street Properties at below-market value.

## I. The FDIC's Motion to Dismiss

The FDIC argues that Koppenhoefer's Complaint should be dismissed for numerous reasons that generally boil down to two theories: (1) this Court does not have subject matter jurisdiction because the anti-injunction provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(j),[3] bars the relief requested on some counts; and (2) because Koppenhoefer fails to state a claim as to some counts because his claims do not meet the stringent pleading requirements set forth in 12 U.S.C. § 1823(e) for claims against the FDIC as receiver. Def.'s Mem. in Supp. Mot. Dismiss 7, 3, ECF No. 12.

### A. Lack of Subject Matter Jurisdiction under FIRREA

#### 1. Legal Framework

In ruling on a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the court must accept all factual allegations in the pleadings as

---

[3] There is disagreement among courts as to whether the § 1821(j) prohibition of injunctive relief is jurisdictional, or merely a bar on the kind of relief that can be granted against the FDIC, and therefore whether § 1821(j) is properly raised by a Rule 12(b)(6) motion for failure to state a claim rather than a Rule 12(b)(1) motion for lack of jurisdiction. *See Veluchamy v. F.D.I.C.*, 706 F.3d 810, 817 (7th Cir. 2013). The Court treats it as a jurisdictional inquiry, but notes that the reasoning below would equally apply if the § 1821 issue was addressed under Rule 12(b)(6).

true and view them in the light most favorable to the nonmoving party. *United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996).

The commonly termed "anti-injunction" provision of FIRREA states that "[e]xcept as provided in this section, no court may take an action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." 12 U.S.C. § 1821(j). This "sweeping ouster of courts' power to grant equitable remedies" bars not only injunctive relief against the FDIC in its role as conservator or receiver, but also any declaratory judgment that would restrain the FDIC from foreclosing on a property or otherwise pursuing the exercise of its powers as described by statute. *Freeman v. F.D.I.C.*, 56 F.3d 1394, 1399 (D.C. Cir. 1995); *see California v. Grace Brethren Church*, 457 U.S. 393, 408–09 (1982). In short, a court is prohibited by § 1821(j) from taking "*any* action either to restrain or affect the FDIC's exercise of its powers as a receiver, unless authorization can be found elsewhere in the section." *Courtney v. Halleran*, 485 F.3d 942, 948 (7th Cir. 2007) (emphasis added).

Section 1821 provides the FDIC with numerous powers in its capacity as a receiver of failed banks, including power to "collect all obligations and money due" to an institution for which it acts as receiver, 12 U.S.C. § 1821(d)(2)(B)(ii), to "perform all functions of the institution in the name of the institution which are consistent with the appointment as conservator or receiver," *id.* § 1821(d)(2)(B)(iii), and to decide where the funds of a failed bank should go, *id.* § 1821(d)(2)(G).

### 2. Koppenhoefer's Claims for Equitable Relief in Counts I–V, IX, and X

The FDIC argues that Koppenhoefer's first five claims amount to requests for declaratory judgment against the FDIC in the exercise of its powers as the receiver for Citizens Bank, and

must thus be dismissed for lack of subject matter jurisdiction. Def.'s Mem. in Supp. Mot. Dismiss 7–15. The FDIC also argues that Counts IX and X request legal action that would restrain the FDIC's exercise of its powers as receiver, and should therefore also be dismissed for lack of subject matter jurisdiction. *Id.* at 18–20. The Court agrees.

Count I asks the Court to declare the Koppenhoefer Guaranty void. Compl. ¶¶ 71–79. But to do so would be to act, via equitable remedy, to restrain or affect "the exercise of powers or functions of the FDIC as conservator or receiver," as barred by § 1821(j). The Koppenhoefer Guaranty memorializes an obligation to Citizens Bank, whose interests the FDIC, as receiver, is undisputedly permitted to manage and collect. *See* 12 U.S.C. § 1821(d)(2). A declaratory judgment that the instrument is void would restrain the FDIC in the management and collection of the Koppenhoefer Guaranty. Thus, this Court lacks subject matter jurisdiction over the prayer for equitable relief to this effect. By finding it lacks jurisdiction to award the particular type of relief Koppenhoefer seeks, the Court does not, of course, take into consideration the merits of K's claim regarding the enforceability of the guaranty. *See Freeman*, 56 F.3d at 1399 (citing *Ward v. Resolution Trust Corp.*, 996 F.2d 99, 102 (5th Cir. 1993)). No court may enjoin the power of the FDIC as receiver to collect debts or foreclose on the property of a debtor held by the failed bank as collateral. *Lloyd v. FDIC*, 22 F.3d at 335, 336–37 (1st Circ. 1994).

Similarly, Count II asks that the TWK Guaranty be declared void because Tessitore lacked the authority to make it. Compl. ¶¶ 80–88. But, just as with the Koppenhoefer Guaranty, such a declaration would restrain the exercise of the FDIC's powers as receiver, relief which is prohibited by § 1821(j). The TWK Guaranty, as alleged in the Complaint, was a liability held by Citizens Bank, and thus now by the FDIC as its receiver. The same reasoning bars

7

Koppenhoefer's Count III, a request for declaratory judgment that the TWK Guaranty is void for lack of consideration. Compl. ¶¶ 89–96.

Count IV requests a "declaratory judgment of accord and satisfaction" with respect to Koppenhoefer's obligations under the Koppenhoefer Guaranty. Compl. ¶¶ 97–106. But, in the same manner as a declaration that the Koppenhoefer Guaranty is void, such a declaratory judgment would be a grant of equitable relief restraining the exercise of the FDIC's powers to collect on debt obligations in its capacity as receiver.

Count V asks that the Court, in declaring "no right to allocation" of funds from foreclosure sales as between the two different Guaranties in this case, interfere with the FDIC's capacity to direct "where funds should go" in the management and satisfaction of the debt obligations it inherited from Citizens Bank. Compl. ¶¶ 107–17. *See Courtney*, 485 F.3d at 949. Directing where funds go in restructuring and collection of debt obligations is one of the FDIC's functions in its capacity as receiver, and therefore the Court lacks jurisdiction to restrict the FDIC's exercise of that function by awarding equitable relief. *See Freeman*, 56 F.3d at 1399.

Count IX disputes the manner in which the FDIC has allegedly chosen to collect on debt obligations through the Koppenhoefer and TWK Guaranties. Compl. ¶¶ 146–51. In Count V, Koppenhoefer seeks equitable relief for this alleged misconduct; in Count IX, he seeks compensatory damages, attorneys' fees, and other damages. However, to seek to impose liability on the FDIC, acting as receiver for Citizens Bank, simply because of its decisions about how to pursue debt collection, is undoubtedly to restrict the FDIC's exercise of its discretionary power to determine where funds go. Such restriction is barred by Section 1821(j), even if the behavior sought to be restricted is illegal. *See Bank of Am. Nat'l Ass'n v. Colonial Bank*, 604 F.3d 1239, 1243 (11th Cir. 2010) (explaining that § 1821(j) "has been interpreted broadly to bar judicial

intervention whenever the FDIC is acting in its capacity as a receiver or conservator, even if it violates its own procedures or behaves unlawfully in doing so").

Count X alleges that Citizens Bank and the FDIC failed to mitigate damages to Koppenhoefer because they sold the Lake Street Properties for below-market value. Compl. ¶¶ 152–159. However, the sale of assets is part of the FDIC's function as receiver. 12 U.S.C. § 1821(d)(2)(B)(iii). Therefore, the Court lacks jurisdiction to hear a suit regarding how the FDIC chooses to dispose of assets of a bank in receivership.

Koppenhoefer argues that because his cause of action arises under FIRREA's grant of federal jurisdiction to review the FDIC's own disallowance of a claim (a "FIRREA claim"), § 1821(j) does not bar this Court's jurisdiction. Pl.'s Resp. to Mot. Dismiss 5–7, ECF No. 15. Section 1821(d)(7)(A) confers jurisdiction on courts to hear appeals from FDIC administrative determinations, and § 1821(j) caveats its jurisdictional bar with the phrase, "[e]xcept as provided in this section." Essentially, Koppenhoefer argues that his requests to "restrain or affect" the FDIC's powers by grants of equitable relief are prayers for means of relief "provided in this section." In support of this argument Koppenhoefer cites *Veluchamy v. FDIC*, 706 F.3d 810, 817 (7th Cir. 2013), where the Seventh Circuit explained:

> [W]here the FDIC as receiver has disallowed a claim pursuant to the administrative process outlined in Section 1821(d) (as happened here), the judicial resolution of that claim expressly permitted by that subsection should not typically run afoul of Section 1821(j), another subsection of the same statute.

*Id.* But Koppenhoefer's interpretation of *Veluchamy*'s reasoning is incorrect. The court in *Veluchamy*, after determining a cause of action existed because a claimant had appealed properly from a FIRREA claim, went on to perform a § 1821(j) analysis of the relief requested—elevating claimants' priority relative to other depositers—precisely to determine whether that relief would restrain or affect the operation of the FDIC's powers. *Id.* at 818 (reasoning that the relief

9

requested did not restrain the FDIC because "FDIC-Receiver's overall function of distributing amounts pursuant to the statutory priority scheme does not seem to be impacted simply because one claimant's priority assignment gets changed").[4] In other words, Veluchamy acknowledged that a cause of action created by § 1821(d) could still fall subject to § 1821(j)'s jurisdictional bar. After all, if following the FIRREA claims and appeals procedure cured any and all jurisdictional defects under § 1821(j), then § 1821(j) would be rendered a nullity, applying only where a case was already barred by not having been brought via the FIRREA claims procedure. *See Veluchamy* at 817.

Accordingly, Counts I–V, IX, and X must be dismissed for lack of subject matter jurisdiction.

### B. Failure to State a Claim Under 12 U.S.C. § 1823(e) and the D'Oench Doctrine

#### 1. Legal Framework

In reviewing a motion to dismiss, a court must accept as true all well-pleaded facts in the complaint, and draw all reasonable inferences in favor of the plaintiff. *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint "must actually suggest that the plaintiff has a right to relief." *Arnett v. Webster*, 658 F.3d 742, 752 (2011) (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir. 2008)). In evaluating a complaint, a court first determines which allegations, if any, are "not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). "Bare assertions" that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim are "conclusory and not entitled to be assumed to be true." *Id.* at 681 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court

---

[4] Note also that *Veluchamy*'s qualifying language—"should not typically"—suggests that in some circumstances, a FIRREA claim on appeal will, as in Koppenhoefer's case, run afoul of Section 1821(j).

then considers the claims remaining and determines whether these "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681. To do so, they must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Arnett*, 658 F.3d at 752 (quoting *Iqbal*, 556 U.S. at 678). In other words, the plaintiff's allegations must demonstrate that the claim "is plausible, rather than merely speculative." *Tomayo*, 526 F.3d at 1083.

Shortly after the FDIC's founding in 1933, the Supreme Court recognized the importance of protecting the FDIC from unrecorded prior claims or arrangements made by third parties with banks whose assets the FDIC took over when the banks failed. *See D'Oench Duhme & Co. v. FDIC*, 315 U.S. 447 456–57 (1942); *Langley v. FDIC*, 484 U.S. 86, 92–93 (1987). This reasoning, known as the *D'Oench* doctrine, has since been codified by statute:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it . . . as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement:
>
> (A) is in writing,
>
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e). The statute requires any agreement tending to diminish or defeat the FDIC's interest in acquired assets to meet a four-part requirement: that it be written, executed by the institution and any person claiming interest in it, that it be approved by the institution's board of directors, and that it have been continuously on file at the depository institution. Furthermore,

any agreement which does not meet these four requirements "shall not form the basis of, *or substantially comprise*, a claim against the receiver of the Corporation." 12 U.S.C. § 1821(d)(9)(A) (emphasis added). The Supreme Court has explained the purpose of § 1823(e) as being "to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets . . . [because s]uch evaluations are necessary when a bank is examined for fiscal soundness by state or federal authorities . . . ." *Langley*, 484 U.S. at 91.

The "agreements" that cannot form the basis of a claim against the FDIC as receiver are to be construed broadly. *See Langley*, 484 U.S. at 92–93 (explaining that under *D'Oench*, the set of unrecorded agreements unenforceable against the FDIC included more than just agreements to perform an act in the future). *Langley* has been interpreted to bar claims against the FDIC Receiver based on implied warranties about goods or services bargained for, and also supposed negative or affirmative untruthfulness, if these agreements are offered as an explanation for why a party should not be held to the terms of the contract. *See Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1149 (7th Cir. 1989) (noting that the federal "receiver of a failed bank . . . [is] entitled to enforce [a] writing without regard to understandings or defenses applicable to the original parties"); *McCullough v. FDIC*, 987 F.2d 870, 872 (1st Cir. 1993) (reading *Langley* to mean that "a contractually bound party's attempt to avoid a contractual obligation and/or to seek damages through a claim of misrepresentation is nothing more than a challenge to the truthfulness of a warranty . . . and a concomitant claim that the truthfulness of that warranty was a condition of the first party's performance"; *FDIC v. Bell*, 892 F.2d 64, 65–66 (10th Cir. 1989) (holding that *Langley* barred a defense based on bank's failure to disclose a material fact regarding financial condition of company whose obligations were guaranteed by defendant).

Thus, when a party alleges, on the basis of misrepresentations or implied warranties, that the party was fraudulently induced into a debt obligation to a bank taken over by the FDIC as receiver, such promises or representations are "agreements" that cannot "substantially comprise" a claim against the FDIC unless they meet the four-part recording requirement of § 1823(e). In practical terms, this means that fraud in the inducement is not a defense to an action to collect a debt by the FDIC as receiver, and that claims of fraud or conspiracy against the FDIC receiver fail when they are substantially supported by representations or promises that do not meet the four-part requirement of Section 1823(e). *See FDIC v. Kratz*, 898 F.2d 669, 671 (8th Cir. 1990) (holding that 12 U.S.C. § 1823(e) precludes the defense of fraud in the inducement unless the representation met the recording requirements).

Section 1823(e) extends to claims made seeking exoneration from or suing on fraud arising from loan guaranties:

> The Court [in *Langley*] explained that one of the purposes underlying § 1823(e) is to allow the FDIC to rely on a bank's records in assessing its financial condition .... The reliability of this assessment, according to the Court, necessarily depends on protecting the FDIC from undisclosed conditions to facially unqualified notes .... Likewise, because the FDIC relies on the existence and strength of guaranties in assessing the financial condition of a bank, it also must be protected from undisclosed conditions to seemingly unqualified guaranties.

*FDIC v. Galloway*, 856 F.2d 112, 115 (10th Cir. 1988) (citing *Langley*).

### 2. Koppenhoefer's Claims for Relief in Counts 6–8

The FDIC argues that Koppenhoefer's claims, as listed in Counts VI–VIII, all fail to state a claim upon which relief can be granted because they are "substantially comprised" of agreements that are inadmissible against the FDIC as receiver under § 1823(e). Def.'s Mem. in Supp. Mot. Dismiss 16–20. The Court agrees.

Koppenhoefer alleges in Count VI, "Fraud," that by exercising appropriate due diligence, Citizens Bank must have known that Tessitore was not authorized by the terms of TWK's Operating Agreement to execute the TWK Guaranty, and that Citizens Bank then hid this fact from Koppenhoefer in order to induce him to sign the Koppenhoefer Guaranty. Compl. ¶¶ 118–131. However, Koppenhoefer's claim boils down to the assertion that Citizens Bank fraudulently induced him to sign a guaranty, despite the fact that that guaranty explicitly disclaimed all duty on the part of Citizens Bank to "provide information to [Koppenhoefer] regarding the enforceability of any of the indebtedness or the financial condition of any Borrower or any other guarantor." Koppenhoefer claims, in effect, that, despite the contract he signed that *does* meet the requirements of § 1823(e), i.e., the Koppenhoefer Guaranty, he was warranted as to the creditworthiness and probity of one of the parties he elected to guaranty by some countervailing warrant not recorded here. Thus, his claim is little more "than a challenge to the truthfulness of a warranty . . . and a concomitant claim that the truthfulness of that warranty was a condition of [his] performance." *Bell*, 892 F.2d at 65–66. The supposed warranty supports his claim of fraud, and as such, is barred from serving as the basis of an allegation against the FDIC by 12 U.S.C. § 1821(d)(9)(A). Count VI does not allege a claim upon which relief can be granted.

Count VII, "Civil Conspiracy," alleges that Citizens Bank knew or must have known that Tessitore was not authorized to execute the TWK Guaranty, Compl. ¶¶ 133–34, and conspired with Tessitore to execute the TWK Guaranty, conceal this from Koppenhoefer, sue Koppenhoefer, collect money from Citizens Bank's various legal actions, and try to collect more from Koppenhoefer than he can justly be made to pay. *Id.* ¶ 139. But this claim, like the claim of fraud in Count VI, rests almost completely on a series of alleged transactions whose purpose

14

was to inveigle Koppenhoefer into signing the Koppenhoefer Guaranty or to "unlawfully allocate funds." *Id.* This fraud, as explained above, is barred as a cause of action pursuant to § 1823(e), and the unlawful allocation of funds is barred as a cause of action because it is a claim for equitable relief. Thus, the alleged conspiracy consists of nothing more than a plan to commit acts that are themselves not, as pleaded here, claims upon which relief could be granted, and the conspiracy charge is similarly not a claim upon which relief can be granted. *See Cumis Ins. Soc., Inc. v. Peters,* 983 F. Supp. 787, 794 (N.D. Ill. 1997) (explaining that "to state a cause of action for civil conspiracy, the plaintiff must sufficiently allege that an underlying wrong existed").

Count VIII, Negligence, alleges that Citizens Bank was negligent in failing to perform due diligence before allowing Tessitore to execute the TWK Guaranty, in failing to prevent him from doing so, and in failing to inform Koppenhoefer of all of this. Compl. ¶¶ 142–43. The substance of this Count is indistinguishable from that underlying Koppenhoefer's fraud and conspiracy claims, merely relabeled here as negligence. For the same reasons that a conspiracy based on barred claims cannot itself succeed as a claim, the negligence claim fails. *See Vasapoli v. Rostoff*, 39 F.3d 27, 35 (1st Cir. 1994) (explaining that "creative relabelling [of] what are essentially misrepresentation claims as claims of negligence" does not create a new and sustainable cause of action if the underlying claims are themselves not ones upon which relief can be granted).

Koppenhoefer claims that § 1823(e) does not apply to alleged misrepresentations, warranties, or fraudulent inducements surrounding the TWK or Koppenhoefer Guaranties because, as the Supreme Court held in *Langley*, fraud in the factum—"that is, the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents," or any fraud in the execution, would render the instrument void, making § 1823(e)

15

inapplicable. Resp. at 7; *Langley*, 484 U.S. 93–94. "Fraud in the execution results in the agreement being void *ab initio*, whereas fraud in the inducement makes the transaction merely voidable." *Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir. 1986). Thus, Koppenhoefer argues, the Koppenhoefer Guaranty was void, rather than voidable, and falls outside of § 1823(e) under *Langley*.

However, Koppenhoefer does not allege facts that support the inference that the Koppenhoefer Guaranty was produced by fraud in the execution:

> "Fraud in the inducement" occurs when fraud induces a party to assent to a commitment that the party understands but to which the party would not otherwise have assented; the promisor knows what it is signing but its assent is induced by fraud. "Fraud in the execution," by contrast, entails deceiving a party to an agreement as to the very nature of the instrument it signs so that the party "actually does not know what he is signing, or does not intend to enter into a contract at all."

*Laborers' Pension Fund v. A & C Envtl., Inc.*, 301 F.3d 768, 779 (7th Cir. 2002). Koppenhoefer merely alleges that he was not told about the extent of the debts of parties he guaranteed when he signed a facially valid guaranty. The complaint does not support a reasonable inference that Koppenhoefer—whatever he may have been led to believe about the financial circumstances of other parties and the wisdom of acting as guarantor—thought he was doing something other than signing a legally binding document contract bearing this liability disclaimer. His allegations do not support a claim of fraud in the execution.

Finally, Koppenhoefer argues that § 1823(e) does not apply to the Koppenhoefer Guaranty because he is not attempting to enforce a secret agreement. Pl.'s Resp. to Mot. Dismiss 13–15. Section 1823(e), however, not only bars the introduction of evidence of "secret agreements" against the FDIC, but effectively works to bar claims of fraud in the inducement against debt obligations to the FDIC, such as the claim Koppenhoefer brings. The *D'Oench*

doctrine was originally designed, it is true, to protect the FDIC from having "secret agreements" enforced against it, but that understanding was expanded by *Langley* and its progeny to bar claims that a valid debt held by the FDIC had been obtained by fraud or misrepresentation. *See Langley*, 484 U.S. at 92.

Accordingly, Counts VI–IX fail to state a claim upon which relief can be granted.

## CONCLUSION

The FDIC's Motion to Dismiss, ECF No. 11, all remaining counts of Koppenhoefer's complaint is GRANTED. The FDIC's Motion for Leave to File a Reply to the Response, ECF No. 18, is GRANTED. Plaintiff's complaint is DISMISSED. The Clerk is directed to close the case.

Entered this 24th day of September, 2014.

                                                  s/ Sara Darrow
                                                  SARA DARROW
                                    UNITED STATES DISTRICT JUDGE